**STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT**

**22-535**


**STATE IN THE INTEREST OF T.L.**


APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 17-JV-18887
HONORABLE LEWIS H. PITMAN, JR., DISTRICT JUDGE


CONSOLIDATED WITH

**22-536**


**STATE IN THE INTEREST OF A.L.**


APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 17-JV-19039
HONORABLE LEWIS H. PITMAN, JR., DISTRICT JUDGE


**WILBUR L. STILES
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Van H. Kyzar, Guy E. Bradberry, and Wilbur L. Stiles, Judges.


**AFFIRMED.**

**Annette Roach**
**CINC Appellate Project**
**2740 Rue de Jardin, Suite 400**
**Lake Charles, Louisiana 70605**
**(337) 436-2900**
**COUNSEL FOR APPELLANT:**
   **G.S.**

**Maggie Anne Simon Leblanc**
**Public Defenders Office**
**301 E. St. Peters Street, Suite 101**
**New Iberia, Louisiana 70560**
**COUNSEL FOR APPELLANT:**
   **G.S.**

**Peggy Garris**
**Attorney at Law**
**124 West Washington Street, Suite C**
**New Iberia, Louisiana 70560**
**COUNSEL FOR:**
   **B.M.L.**

**Diane E. Cote**
**825 Kaliste Saloom Road**
**Brandywine III, Room 150**
**Lafayette, Louisiana 70508**
**(337) 262-5913**
**COUNSEL FOR APPELLEE:**
   **Department of Children and Family Services**

**Denise Henderson**
**State of Louisiana, Mental Health Advocacy Service**
**302 Dulles Drive, Room U-47**
**Lafayette, Louisiana 70506**
**COUNSEL FOR:**
   **T.L.**
   **A.L.**

**STILES, Judge.**

G.S.[1] appeals the trial court's judgment terminating her parental rights to her minor children, T.L. and A.L. In these now consolidated matters, G.S.'s appellate counsel assigns no specific errors in the trial court's ruling but instead requests an independent review of the record on appeal. Following review, we affirm.

## FACTS AND PROCEDURAL HISTORY

The record reflects that T.L., born to G.S. and B.L. on February 8, 2014, came into the custody of the Department of Child and Family Services in September 2017 on the grounds of neglect and dependency after G.S. was arrested on outstanding warrants. Shortly thereafter, A.L. was born to G.S. and B.S. on February 12, 2018 and came into the custody of DCFS in April 2018, again on the grounds of neglect and dependency. Additionally, A.L. was determined to be a substance-exposed newborn given a positive screen for marijuana. The instanter order filed at the time A.L. came into custody indicated that G.S. tested positive for both methamphetamine and amphetamines. Relatives of the children have served as their foster parents.

DCFS filed a Petition for Termination of Parental Rights and Certification for Adoption on September 12, 2019, seeking termination of G.S.'s parental rights to each of the two children. DCFS also sought the termination of parental rights of both fathers.[2]

---

[1] We refer to the parents and the children by the use of initials given the confidential nature of these proceedings. *See* Uniform Rules---Courts of Appeal, Rules 5-1(a) and 5-2.

[2] The appeal as it relates to T.L. bears appellate docket number 22-535 whereas the appeal relating to A.L. bears appellate docket number 22-536. We address the consolidated matters collectively herein.

The trial court heard the matter over the course of three days in May 2021. DCFS presented the testimony of supervising case workers regarding G.S.'s failure to comply with the case plans issued in this case, namely G.S.'s ongoing struggles with housing, employment, and substance abuse. With regard to the latter, G.S. was briefly hospitalized during the course of the hearing and, upon testing ordered by the trial court, returned a positive screen for marijuana. The trial court also heard testimony regarding the bonds the children had established with their respective foster parents, all of whom have indicated a willingness to adopt the children.

Rendering written reasons, the trial court determined that DCFS met its burden of proving by clear and convincing evidence that G.S. did not substantially comply with her case plan despite the passage of more than one year, that there was no reasonable expectation of substantial improvement in the near future, and that the termination of G.S.'s parental rights was in the best interests of the minor children. By a resulting June 24, 2021 judgment, the trial court terminated G.S.'s parental rights to both children and further certified the children eligible for adoption. The trial court further terminated the children's fathers' parental rights to the children, although that ruling is beyond the scope of the present matter which singularly addresses the judgment as it relates to G.S.

In briefing to this court, G.S.'s appellate counsel assigns no specific error explaining that examination of the record reveals no "non-frivolous issues to raise before the court." Counsel therefore requests that "the court independently review the records in these consolidated cases to determine whether any possible error exists that could support a finding that the trial court abused its discretion when rendering judgment terminating the parental rights of G.S. and certifying the children free for adoption." This requested review is in keeping with the procedure identified by this

court in *State ex rel. M.B.*, 21-532, p. 3 (La.App. 3 Cir. 2/23/22), 335 So.3d 305, 307 (en banc) ("While counsel for appellant assigns no errors, this court is required to independently review the record to determine whether any possible error exists.")

**DISCUSSION**

*Burden of Proof*

The supreme court has explained the "[p]ermanent termination of the legal relationship existing between natural parents and children is one of the most drastic actions the State can take against its citizens." *State ex rel. A.T.*, 06-501, p. 5 (La. 7/6/06), 936 So.2d 79, 82. Notwithstanding that observation, "the primary concern of the courts and the State remains to determine and insure the best interest of the child, which includes termination of parental rights if justiciable statutory grounds exist and are proven by the State." *Id.* (citing *State ex rel. S.M.W.*, 03-3277 (La. 2/21/01), 781 So.2d 1223).

Pertinent to this case, La.Ch.Code art. 1015 provides statutory grounds for termination of parental rights as follows:

> (5) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
>
> . . . .
>
> (b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
>
> (c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.
>
> (6) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the

3

department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

The State must establish at least one of those statutory grounds by clear and convincing evidence. *See* La.Ch.Code art. 1035.[3] Moreover, even if the State satisfies its evidentiary burden, the court may not terminate parental rights unless it determines that doing so is in the child's best interest. *State ex rel. A.T.*, 936 So.2d 79 (citing La.Ch.Code art. 1039; *State ex rel. G.J.L.*, 00-3278 (La. 6/29/01), 791 So.2d 80). On review, an appellate court will not disturb a trial court's findings of fact in a termination matter absent manifest error or unless the findings are clearly wrong. *State in Interest of M.B.*, 335 So.3d 305 (citing *In re A.J.F.*, 00-948 (La. 6/30/00), 764 So.2d 47).

*Grounds*

DCFS sought termination of parental rights under the grounds provided by La.Ch.Code art. 1015(5)(b)[4] as well as La.Ch.Code art. 1015(6). The trial court determined that DCFS established the grounds under both Paragraph 5 and Paragraph 6. We address these in turn, although DCFS was required to prove only one ground. *See State ex rel. D.L.R.*, 08-1541 (La. 12/12/08), 998 So.2d 681.

---

[3] Louisiana Children's Code Article 1035(A) provides that "[t]he petitioner bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence."

[4] DCFS sought termination under both La.Ch.Code art. 1015(5)(b) and (c). At trial, DCFS largely focused on Paragraph 5(b) rather than 5(c), although it introduced evidence regarding G.S.'s failure to maintain contact with the children through testimony regarding G.S.'s repeated failure to attend scheduled visitation with the children.

Louisiana Children's Code Article 1015(5)

As for the former, La.Ch.Code art. 1015(5)(b) provides the ground of abandonment for a failure to provide significant contributions for the child's support for a period of six months, as of the time the petition is filed, and the circumstances demonstrate an intention to permanently avoid parental responsibility. On this point, DCFS case worker Markella Robertson plainly testified that G.S. *never* provided the required parental contribution during her multi-year supervision of the matter, which included the period prior to the filing of the petition for termination. G.S. confirmed the allegation in her own testimony, explaining that she had only attempted to make the contribution upon receipt of her "stimulus check" but that the attempt failed. G.S. suggested that the failure was attributable to Ms. Robertson's refusal to provide her with the children's "social number and case number." When asked how many times she made the attempt, G.S. explained: "Just that one time." G.S. demonstrated no ability to provide the support contribution in the future given her failure to secure employment. In any event, the record supports the trial court's determination that DCFS proved the ground for termination as provided by La.Ch.Code art. 1015(5)(b).

Louisiana Children's Code Article 1015(6)

As for La.Ch.Code art. 1015(6), DCFS was required to prove by clear and convincing evidence that 1) more than a year had elapsed since T.L. and A.L. were placed in DCFS's custody, 2) there had been no substantial compliance with the case plan, and that 3) there was no reasonable expectation of significant improvement in G.S.'s conduct in the near future. The record supports each of the trial court's determinations in this regard.

First, both children were taken into DCFS's custody and remained in foster care for more than four years. Further, both Ms. Robertson and subsequent case

worker Deidra Chevalier testified regarding G.S.'s difficulty in consistently working through the various components of her case plan.

Significantly, G.S. never provided proof of employment, never provided the parental support contributions as explained above, and never maintained stable housing. Ms. Robertson testified that during the period of her supervision, G.S. moved twenty-nine times, including periods spent in a rehabilitation facility and a sober living facility. Ms. Chevalier explained that during her subsequent supervision, G.S. had at least two residences, including one which would have been unsuitable for the children given inadequate bedding for the children. Ms. Chevalier explained that when she returned to the home at a later date, she found it would be suitable for smaller children only with additional childproofing. G.S. acknowledged the instability in her housing situation "since the case started in 2017[.]" She stated that:

> I'm not going to deny the fact that I have been place to place and trying to find a steady place. I mean, I haven't stopped trying and it may have taken a little while to get there, but I'm getting there now. I just recently got all my paperwork that I've been asking OCS to help me get. I got all that together and not - - I just got to wait for my social security card to come in that I applied for and I can now apply for Section 8 like I've been asking for help to do.

Those desires, however, remained only aspirational at the time of the hearing. Rather, the evidentiary record supports DCFS's position that G.S. consistently failed to maintain stable housing as required by her case plans and continued to do so at the time of the hearing.

Additionally, DCFS maintained that G.S. failed to comply with those aspects of her case plan regarding mental health evaluation and substance abuse rehabilitation. As for the former, G.S. failed to follow through with referrals for mental health evaluation despite her ongoing representations that she was interested in counseling. With regard to the latter, G.S. lived in a sober living facility for a

6

period and also pursued in-patient drug rehabilitation but did not complete the course of treatment. In addition to the failure to complete treatment, G.S. acknowledged that she had twice relapsed whereas the case workers testified that G.S. refused or missed a number of scheduled drug screenings. G.S. also returned positive drug screens at other times, including a positive test for amphetamine, methamphetamine, and marijuana. As discussed below, G.S. also tested positive for marijuana use during the course of the termination hearing.

Finally, DCFS presented testimony indicating both that G.S. failed to complete the parenting courses required of her and failed to maintain her visitation schedule with the children. With regard to her parenting courses, Jennifer Zanazzi, resource manager for the Extra Mile, explained that G.S. attended only one half of the parenting classes required for completion of its course but that the agency discharged G.S. after she failed to appear for four classes. G.S. acknowledged that she did not complete the Extra Mile coursework, stating that she became frustrated when the agency required her to "restart" her classes after she gave birth to another child. G.S. testified when the agency attempted to reschedule the class "it just got to the point where [she] just kind of gave up."

Similarly, G.S. failed to maintain the required visitation schedule with the children. Ms. Robertson stated that G.S. attended only twenty-two of seventy scheduled visitations, some of which were due to incarceration. Ms. Chevalier also testified that, despite G.S. having a specific visitation plan each month, she missed a number of those visits due to alleged miscommunication or failure to confirm the scheduled visitation and thereafter arrive at the prescribed time.

Given those circumstances, we find no manifest error in the trial court's determination that G.S. failed to substantially comply with her case plan. Likewise,

the circumstances cited above were ongoing at the time of trial. G.S. anticipated improving compliance in each of the areas but failed to demonstrate positive evidence of that improvement. To the contrary, she tested positive for marijuana in the midst of the hearing and did not display a sense of urgency in rectifying her drug use.[5] Similarly, she anticipated obtaining employment but was waiting on receipt of her social security card and anticipated applying for permanent housing upon completion of her paperwork. As noted by the trial court at the close of G.S.'s testimony, G.S.'s involvement with DCFS began in September 2017. Despite the passage of forty-two months at the time of trial, G.S. had not complied with any aspect of her case plan and identified only unexecuted plans for achieving the goals identified in the case plan.

Accordingly, we find no manifest error in the trial court's determination that DCFS demonstrated the grounds for termination provided by La.Ch.Code art. 1015(6).

*Best Interests of the Child*

As noted, upon finding that a ground for termination has been proven by clear and convincing evidence, the trial court "must not terminate parental rights unless it determines that to do so is in the child's best interests." *State ex rel. A.T.*, 936 So.2d at 82 (citing La.Ch.Code art. 1039); *State ex rel. G.J.L.*, 00-3278 (La. 6/29/01), 791 So.2d 80). We conclude that the above-cited evidence, along with the entirety of the appellate record, supports the trial court's conclusion that termination of G.S.'s parental rights is in the best interests of both T.L. and A.L.

---

[5] G.S. admitted at the hearing that she had smoked marijuana the previous day. When asked whether she had plans to stop using marijuana, G.S. stated that: "After I speak with - - after I see with my doctors and my mental health counselor then we'll see where to go from there." G.S. acknowledged that she did not have a prescription for marijuana use.

G.S. continues to fail to offer a secure environment. DCFS instead demonstrates that G.S. is unable or unwilling to rectify deficiencies which undermine her ability to offer T.L. and A.L. a supportive and stable home. Both children have bonded with the relatives who have served as their foster parents for years and who are providing the children with the resources required for their respective developmental delays.

Following review, we find that the evidence supports the trial court's determination that DCFS proved by clear and convincing evidence that the parental rights of G.S. to her children, T.L. and A.L., should be terminated, and that termination of parental rights is in the best interests of the children.

## DECREE

For the foregoing reasons, the trial court's June 24, 2021 judgment is affirmed. Costs of this proceeding are assessed to G.S.

**AFFIRMED.**